# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**JASON SMALL,**

    **Plaintiff,**

**vs.**                                                **Civil Action No. _____**

**MEMPHIS LIGHT GAS & WATER,**      **JURY TRIAL DEMANDED**

    **Defendant.**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COMES NOW the Plaintiff, Jason Small, and brings this Complaint for Damages and Injunctive Relief against his current and long term employer, the Defendant, Memphis Light Gas & Water, for discrimination, harassment and retaliation against him based upon his religion and disability. In support thereof, Plaintiff states as follows:

### JURISDICTION

1. This Court has jurisdiction over Plaintiff's claims brought through 42 U.S.C.§1983 pursuant to 28 U.S.C. §§ 1331, and 1343(3) in that this case involves a civil action arising under the Constitution and the laws of the United States; 28 U.S.C.§1343(a)(3) and (4) in that this is a civil action to secure equitable or other relief and to redress the deprivation of a right, privilege or immunity secured by the Constitution or under acts of Congress providing for the protection of civil rights; 42 U.S.C. § 2000(e)-5(f)(3) as this is a civil action brought under Title VII of the Civil Rights Act of 1964.

2. At all times relevant, the Defendant is an employer within the meaning of Title VII, 42 USC 2000e, *et seq.*, and within the meaning of the American with Disabilities Act, 42 USCA § 12101*, et seq*.

3. Plaintiff received his Notice of Suit Rights from the EEOC via certified mail on November 28, 2016 regarding his EEOC Charge No. 490-2013-02635 alleging religion and disability discrimination and retaliation, which notice was mailed on November 18, 2016. This lawsuit is timely filed within 90 days after Plaintiff received this notice.

## VENUE

4. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 (b)(c) as Defendant is subject to the jurisdiction of this Court and the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

5. Plaintiff, Jason Small ("Mr. Small"), is a practicing member of Jehovah's Witnesses religious organization and an adult male citizen of the United States, who resides and has resided at all times pertinent to the events referred to herein in Shelby County, Tennessee.

6. The Defendant, Memphis Light Gas and Water Division (MLGW), a division of the City of Memphis, Tennessee, is a public utility providing electricity, gas and water to customers of the Memphis, Tennessee area with its principal place of operation at 220 South Main, Memphis, Tennessee 38103.

## FACTS

7. Mr. Small brings this Complaint for Damages and injunctive relief against his current and long term employer, MLGW, for discrimination, harassment and retaliation against him based upon his religion and disability.

8. Mr. Small is a twenty (20) year employee of MLGW.

9. During his tenure with MLGW, Mr. Small has sustained multiple injuries while on the job, resulting in Mr. Small receiving permanent disability status in 2013.

10. On or about 02/27/13 Mr. Small's doctor, Dr. Christian Fahey, informed Mr. Small that he could no longer safely perform the essential functions of his job as Substation Electrician due to his disability.

11. Mr. Small was given disability status, receiving only 2/3 of his salary during this time.

12. On or about 03/25/13 MLGW Human Resources Manager Rutha Griffin, pursuant to policy, informed Mr. Small that because of his disability status, Eric Conway would reassign Mr. Small to a comparable position at MLGW.

13. On or about 04/13 Mr. Conway informed Mr. Small that Mr. Small should regularly check the MLGW job postings and notify him of his interest in jobs he was qualified for and which did not include "heavy lifting" in the job description.

14. Mr. Conway informed Mr. Small he would have up to twelve (12) months to find a comparable position.

15. At that time, Mr. Small also informed Mr. Conway that he could not work nights and weekends due to his religious obligations with the Jehovah's Witnesses.

16. Mr. Small has been a practicing Jehovah's Witnesses for 28 years.

17. Jehovah's Witnesses are required to attend two weekly meetings for religious services. The days of these meetings are on Sundays and Wednesday evenings.

18. The Wednesday meeting totals approximately one hour and forty-five minutes in length.

19. Jehovah's Witnesses are generally required to attend two (2) services on Sundays.

3

20. On Sundays, Mr. Small's congregation shares their place of worship with another congregation, which results in annual rotating meeting times on Sundays.

21. As part of his worship as a Jehovah's Witness, Mr. Small is required to engage in public ministry, or field service, for a half-day every week, primarily on Saturdays.

22. He also has to attend a minimum of three (3) assemblies and conventions, annually, that take place on the weekends. Mr. Small serves as an elder and has many additional responsibilities, including instructing and assisting other members.

23. The job Mr. Small had at MLGW prior to his disability leave allowed him to attend his religious services without problem or interference.

24. On or about 04/09/13 Mr. Small saw that the job of Inspector (Revenue Protection) was posted.

25. On or about 04/11/13 Mr. Small called Mr. Conway and expressed his desire to be placed in the Inspector (Revenue Protection) position. Mr. Conway told Mr. Small that he was not eligible for the position because it was against MLGW policy to reassign a bargaining unit employee to a management position. Mr. Conway also stated that he believed Mr. Small was not qualified for the position and that the position "definitely paid too much money" in relation to Mr. Small's previous position. Mr. Small informed Mr. Conway that his previous salary was higher than the midpoint salary of the Inspector position. Mr. Conway then told Mr. Small he was also not qualified because he did not know MSS (Management Support Systems) software. Further, Mr. Conway told Mr. Small that regardless of his experience, he would not place Mr. Small in a management position because that was not MLGW policy. Mr. Small asked Mr. Conway to provide him with a copy of the MLGW policy, however, Mr. Conway told Mr. Small, "We don't give that information out." He then made statements that Mr. Small likely

"couldn't lift a meter because of [his] wrist [injury]." Mr. Small then explained that his disability restrictions did not include lifting, only combined grasping and twisting of +40 lbs.

26. Mr. Conway knew of Mr. Small's religious beliefs. Mr. Conway's comments to Mr. Small were due to Mr. Conway not wanting to accommodate Mr. Small's religious obligations and/or due to Mr. Small having a disability or being perceived as having a disability.

27. On or about 04/11/13 Mr. Small called Human Resources Manager Rutha Griffin and asked her if his work experience qualified him for the Inspector position. She told Mr. Small he was actually qualified for the position, but that Dr. Fahey had to make the ultimate determination if Mr. Small could perform the job with or without reasonable accommodation. Ms. Griffin confirmed that Mr. Small could apply for a management position; and that there was no policy preventing Mr. Small from applying and receiving the position. Ms. Griffin then stated that HR would submit the job description to Dr. Fahey and MLGW would base their decision on his determination.

28. Mr. Small called Mr. Conway weekly for over a month to find out about the position and Dr. Fahey's correspondence with MLGW, but was told that Dr. Fahey had not responded.

29. Mr. Small contacted Dr. Fahey in May 2013 about his medication and at that time Dr. Fahey told that Mr. Small he was pleased that Mr. Small had found a new position and was happy to have approved him for the Inspector position. Mr. Small then called Mr. Conway again to inquire about Dr. Fahey's response and again Mr. Conway said that he had not heard anything from Dr. Fahey. Mr. Small then relayed his conversation with Dr. Fahey and was told by Mr. Conway that he (Jason Small) could have no further conversations with Mr. Fahey unless nurse/case manager Karen Maggs was present.

30. In July 2013 Dr. Fahey provided Mr. Small with a copy of his correspondence to MLGW dated 04/17/13, less than a week after he was sent the job description and physical demand analysis stating that Mr. Small was able to perform the essential function of the Inspector job.

31. The Inspector position would allow Mr. Small to attend his religious services without issue.

32. Later that week, in May 2013, Mr. Conway called and offered Mr. Small the job of Service Advisor which had just become available. Mr. Small asked for a copy of the job description so he could review the duties and responsibilities. However, Mr. Conway said he could not provide Mr. Small with the description because he "had to get the job filled." He only told Mr. Small a vague description of what the job entailed and said that it required "shift work." Again, Mr. Small reminded Mr. Conway that he would not be able to work varying shifts because of his <u>religious obligations</u>. Mr. Conway said "OK, but be mindful that you only have twelve months to be placed [in a position]." Mr. Small stated that he was aware of the deadline was still hopeful that he would be reassigned to the Inspector position for which Dr. Fahey had approved him or another position that did not conflict with his religious obligations.

33. Mr. Small then received a call from his nurse/case manager Karen Maggs scheduling Mr. Small an official appointment with Dr. Fahey regarding the Inspector position approval. Mr. Small recalls the appointment began with Dr. Fahey asking Mr. Small who he had "upset" at MLGW because he had never seen such "push-back" regarding a patient being placed in an accommodation position due to a worker's compensation injury. He then showed Mr. Small a copy of an unofficial, unsigned, and undated supplemental list of "Inspector Duties" that had just recently been provided to him by MLGW. This supplemental list had over 30 additional duties for an Inspector not listed in the original job posting.

6

34. Dr. Fahey stated that despite this new description, his professional opinion remained unchanged and that Mr. Small would be able to perform the essential functions of Inspector job. He did circle some listed items that he said were "questionable" such as firing a handgun and removing water box tops that weigh up to 100 lbs., but still determined that Mr. Small would be able to perform the job.

35. However, about a week after this meeting, Mr. Conway called Mr. Small and told him that Mr. Small was <u>not approved</u> to perform the job due to the questionability of Mr. Small being able to fire a handgun and/or remove 100 lb. water box tops. Mr. Small was very surprised to hear this, and asked Mr. Conway if an accommodation could be made based on the fact that Dr. Fahey believed Mr. Small could perform the essential functions of the job. Mr. Conway then stated that those two actions were essential functions of the job. When Mr. Small asked why removing 100 lb. water tops was an essential function when heavy lifting was not listed on the official job description nor the physical demand analysis, Mr. Conway only offered Mr. Small the Service Dispatchers job stating that "this job too requires shift work which you weren't interested in before because of the scheduling conflicts" to which Mr. Small stated that was correct. The conversation ended with Mr. Conway saying "Ok, we're good," indicating to Mr. Small that he understood these scheduling limitations.

36. His worker's compensation attorney Barclay Roberts then sent Mr. Conway a letter asking him to reconsider Mr. Small for the Inspector job. Mr. Conway then called Mr. Small and stated that he was scheduling Mr. Small to be tested for the Service Dispatchers position and he could <u>be terminated</u> if he did not accept the job. Mr. Small stated that he had never heard this rule before had only been previously been told that he had 12 months to find a suitable position. Mr. Small had received those instructions from his manager Rutha Griffin. When Mr. Small asked

for a copy of the details of the reassignment policy, Mr. Conway declined to provide him with one.

37. Mr. Conway later said that he "made a mistake" in telling Mr. Small he would be required to take this position, after Mr. Small was in the position. Mr. Conway never received any discipline for this mistake, nor did MLGW take any steps to correct this mistake. The reasonable inference was that Mr. Conway's conduct was intentionally done to prevent Mr. Small from being placed in the Inspector position – a position that did not interfere with his religious beliefs -- and/or Mr. Conway's conduct was due to disability discrimination against Mr. Small (or Mr. Conway perceiving Mr. Small to have a disability).

38. Mr. Small took the dispatcher test and was called later that week on Thursday and told that he was to report to Service Dispatching the following Monday.

39. On or about 07/25/13 Mr. Small restated his religious obligations and made another religious accommodation request stating that he needed to find a position with a schedule similar to what he had during his entire tenure with the Division that would accommodate his worship schedule. Mr. Conway said that he would "look into a religious accommodation request."

40. Mr. Small asked if he could wait to start the position until after a determination on the religious accommodation had been made, but Mr. Conway denied this request and instead reminded Mr. Small of the consequences of his not reporting to work as scheduled, i.e., he would be fired.

41. MLGW and/or Mr. Conway were aware of Mr. Small's need for religious accommodation from at least his first religious accommodation request dated March 2013, when Mr. Small applied for the Inspector position.

8

42. Mr. Small then reported to work at service dispatching as scheduled and was told by his coworkers that he would be required to work weekends and holidays, with frequent mandatory overtime. This information was never provided to Mr. Small by anyone in HR prior to Mr. Small being forced to take this position.

43. Mr. Small contacted Mr. Conway on 8/01/13 to ask why he was required to take a job that interfered with his religious beliefs and obligations and Mr. Small requested a different reassignment position. Mr. Conway emailed Mr. Small and stated that the reassignment process for Mr. Small was over, essentially meaning he would not accommodate Mr. Small. Prior to this email, Mr. Small was under the belief that the assignment was not permanent, as a two (2) week trial period (per Article 17 of the MOU) is required and allowed for an employee who enters a new position.

44. Mr. Small was given no choice but to take the dispatching position, in hopes that he would eventually move to the Inspector position as it was clear Mr. Conway was opposing (wrongfully and illegally) his request for accommodation and was discrimination against him due to his disability perceived disability. Mr. Small reported to the dispatching department assuming that he would be presented with details regarding the responsibilities and requirements of the job as is MLGW's practice with other positions. Mr. Small never received any documentation regarding the responsibilities and requirements of the job after repeated requests.

45. On or about 08/01/13 Mr. Small requested a meeting with Rutha Griffin to discuss his concerns regarding his religious accommodation request and the lack of information provided to him about the dispatching schedule. This meeting request was denied.

46. On or about 08/02/13 Mr. Small contacted the Vice President of HR Dr. Von Goodloe to discuss his concerns regarding his religious accommodation request. He told Mr. Small to

provide a letter from his "church leadership" outlining the days and times he had required worship. Mr. Small provided him with this letter on 8/05/13.

47. On or about 08/28/13 Mr. Small requested a meeting with Virginia Leonard of MLGW Labor Relations about a religious accommodation request.

48. On or about 08/29/13 Mr. Small was told by Ms. Leonard that a meeting was set to discuss his religious accommodation request on 08/30/13. He was told he could not attend the meeting.

49. On or about 9/06/13 Mr. Conway notified Mr. Small by email that his religious accommodation request was wrongfully denied.

50. On or about 9/11/13, having exhausted all internal routes, Mr. Small filed a Charge of Discrimination due to disability and religious discrimination, and retaliation with the Equal Employment Opportunity Commission.

51. On or about 12/16/13 Mr. Small made a written request to his Supervisor Phelon Grant to discontinue training and be assigned a different position in accordance with Service Dispatch policy NBC-279 which states there are times when "some trainees [will] have discovered that this is not the right job for them. If that is the case, they have the right to discontinue training and be assigned somewhere else".

52. On or about 12/23/13 his request pursuant to policy NBC-279 was wrongfully denied.

53. On or about 12/25/13 Mr. Small made a follow up request to his Manager Joseph Byrd pursuant to policy NBC-279 in an effort to avoid the upcoming conflicts with his religious services.

54. On or about 12/26/13 his request was wrongfully denied.

55. On or about 01/03/14 Mr. Small began counseling sessions with the Employee Assistance Program (EAP) for job related stress, due to the hostile work environment because of his religious beliefs and/or due to his disability or perceived disability.

56. On or about 01/07/14 Mr. Small's job trainer Joy Adams notified training chief Johnnie Price that Mr. Small was having difficulties with his job due to stress and scheduling conflicts.

57. The next day, on or about 01/08/14 Mr. Small received three (3) months of employee training evaluations from Training Chief Johnnie Price. These evaluations are supposed to be monthly.

58. Mr. Small received satisfactory evaluations.

59. On or about 01/27/14 Mr. Small received a training evaluation. He again noted that he was experiencing serious problems fulfilling the duties of Service Dispatcher due to his religious responsibilities.

60. On or about 03/06/14 Mr. Small emailed his Vice President Chris Bieber to request a meeting about the serious problems he was having regularly of the failure of MLGW to properly respect his requests for reasonable accommodations. This request was denied and he was told the situation was "out of [Mr. Bieber's] hands."

61. On or about 03/19/14 Chris Bieber emailed Mr. Small stating that he had been notified by the MLGW Legal department that he had a pending EEOC matter and to direct Mr. Small to them.

62. On or about 04/17/14 Mr. Small was informed that testing was scheduled for a position that he had previously bid on, Corrosion Control Surveyor.

11

63. On or about 05/06/14 Mr. Small took the Corrosion Control Surveyor test even though he was unfamiliar with the information as it was not his area of expertise. However, Mr. Small was desperate to be placed in a new position with a better schedule re his religious obligations.

64. On or about 05/27/14 Mr. Small learned he did not pass the Corrosion Control Surveyor test in a MLGW email he received from a former MLGW employee who had retired years ago, and was no longer working for MLGW.

65. On or about 05/29/14 Mr. Small made a third religious accommodation request.

66. On or about 07/10/14 Mr. Conway wrongfully denied Mr. Small's third religious accommodation request.

67. On or about 08/12/14 Mr. Small was told that he was required to work Wednesday evening (08/13/14) during the time of his weekly religious worship. He emailed Supervisor Phelon Grant and told him he would be unable to work Wednesday evenings because of his sincerely held religious beliefs—of which Mr. Grant was already aware. Mr. Small's coworker Carolyn Abston agreed to work the evening in Mr. Small's place.

68. Later that month, after the quarterly shift bid was completed, Mr. Small was notified that he would again have to work on Wednesday nights, during his weekly religious worship. Service Dispatcher Kay Adams attempted to swap shifts with Mr. Small to assist him with his religious schedule conflict. However, this schedule swap was denied by Supervisor Phelon Grant.

69. On or about 09/12/14 Mr. Small requested by email to use 2.5 hours of his personal vacation time on Wednesdays to attend religious services. This request was wrongfully denied by Chief Service Dispatcher Millicent Hulbert and Supervisor Phelon Grant.

70. On or about 9/25/14 Mr. Small's manager Joseph Byrd sent an email to Mr. Conway

requesting private information from Mr. Small's doctor because he "was about to discipline him for insubordination and sick leave abuse", despite that it is wrongful and a violation of MLGW policy to discipline an employee for approved leave, and despite that it was wrongful and a violation of MLGW policy for any employee to contact Mr. Small's doctor as this must be done by Medical Services at MLGW.

71. On or about 09/25/14 Supervisor Phelon Grant gave Mr. Small a non-disciplinary warning on sick leave usage related to this request, instead of allowing Mr. Small to have his reasonable religious accommodation.

72. Mr. Small then filed a charge with Paula Mitchell of MLGW Labor Relations for religious discrimination, ADA violations, denial to use earned vacation time, falsification of MLGW documents, and retaliation.

73. On or about 10/01/14 Mr. Small's charge filed with Paula Mitchell of MLGW Labor Relations was wrongfully dismissed without being investigated.

74. Manager Joe Byrd gave Mr. Small a written reprimand for the same dates as the warning from Supervisor Grant, despite that Mr. Small already had a warning and despite that Mr. Small's reasonable request for accommodation was wrongfully denied.

75. On or about 10/10/14 Mr. Small filed grievance #33108 with the Union for denying his personal vacation time and for his (Small) receiving discipline for using sick time.

76. On or about 01/02/15 Mr. Small filled out a form to use his personal leave for an essential religious service on 04/03/15. This leave was approved by Chief Service Dispatcher Joann Johnson on 02/19/15.

77. On or about 02/13/15, as a result of grievance #33108, Service Dispatch Management was found to have violated the MOU in denying Mr. Small the use of his vacation and for the

discipline related to that wrongful denial. Mr. Small's written reprimand was rescinded by MLGW Employee Relations.

78. On or about 02/20/15 Mr. Small submitted a letter from Dr. Neil Aranov limiting Mr. Small to 40 hours per week due to job related stress and depressive symptoms. Mr. Small submitted this letter in accordance with MLGW Service Dispatch Policy, which requires a letter for employees needing overtime exemption due to medical reasons. Supervisor Grant wrongfully denied Mr. Small's request for any accommodation related to this letter.

79. On or about 02/26/15 Mr. Small arrived at work and was told that Supervisor Grant wanted to meet with him. When he arrived at the meeting room he was surprised to find Supervisor Grant, Mr. Conway, his manager Joe Byrd, and the company nurse Vernicia Davis. In this meeting, they tried to pressure Mr. Small to sign documentation related to Mr. Small's mental health. He refused to sign the documentation as this was not the appropriate process for gathering information on an employee's medical conditions.

80. On or about 02/26/15 Mr. Small received an email from MLGW Employee Relations Department that wrongfully denied his internal complaint.

81. On or about 03/13/15 Mr. Small wrongfully received an oral reprimand for allegedly violating the Service Dispatch Operating Procedures, in part because he allegedly did not help fulfill a co-worker's responsibilities. The co-worker tasked with these responsibilities (not Mr. Small) was not disciplined.

82. On or about 03/18/15 Mr. Small received a written reprimand for the same alleged violation.

83. On or about 03/23/15 Mr. Small filed grievance #33194 for having overtime cancelled without being notified, for receiving an oral then written reprimand for the same alleged violation, and for having to work seventeen (17) hours in a twenty-four (24) hour period.

84. On or about 03/27/15 Mr. Small was told by Supervisor Grant that his doctor's letter submitted on 02/06/15 requesting that his working hours be limited to 40 hours per week, was denied because the current departmental policies were supposedly "out of line with Division and Federal requirements." However, federal law requires employers to provide reasonable accommodations and Mr. Small's requests were reasonable. Mr. Small asked him for a copy of these requirements and was told he did not have them nor knew what they were exactly.

85. On or about 03/27/16 Mr. Small was told that he would have to work on 04/03/15 despite being approved off that day for his religious services. Mr. Small told his work that he could not work that day due to his sincerely held religious beliefs.

86. On or about 04/02/15 after trying unsuccessfully to swap shifts with his coworkers, Mr. Small notified Supervisor Phelon Grant that he would be unable to work on 04/03/15 because of an essential religious service that he had to attend. He was approved on 02/19/15 to be off that day for these religious services but that his approved leave was later rescinded. Supervisor Grant then threatened Mr. Small with disciplinary action if he went to his worship service instead of reporting to work.

87. On or about 04/05/15 Mr. Small was told he had to work 16 hours' overtime on 04/08/15. He asked if he would be able to leave from 6:30 to 9:30 to attend his religious services, as he had continually requested all year. He was told that he could not leave and that he had to work the entire time and miss his services.

88. Mr. Small attended his religious services on 04/3/15 and 04/8/15.

15

89. On or about 04/16/15 Mr. Small was notified by Mr. Conway that he was scheduled for an interview with Mr. Conway the next day 04/17/15 for a position that he bid on: Safety Training Specialist. Other candidates were given over a week to prepare for the interview but Mr. Small was given less than twenty-four (24) hours. Mr. Small believes he was not treated fairly in the interview. Further, a less senior, less qualified candidate was selected for the position.

90. On or about 04/21/15 Mr. Small wrongfully received a three (3) day suspension for not reporting to work on 04/03/15 and 04/08/15 during his religious services. He was not given twenty-four (24) hour notice of the pending discipline, as required in the MOU.

91. On or about 04/21/15 Mr. Small filed grievance #33195 for lack of adherence to MOU rules, discrimination based on religion, denial of vacation and wrongful discipline.

92. On or about 04/28/15 and 04/30/15 Mr. Small amended his EEOC Charge of Discrimination to reflect recent events of harassment, discrimination, and retaliation.

93. On or about 05/15/15 Mr. Small found out that he was docked 30 minutes pay on 3/11/15 after scanning in 13 minutes late at 3:43 and charged an unauthorized absence. Policy states employees must be more than 15 minutes late to be charged an unauthorized absence. Mr. Small was not 15 minutes late. Mr. Small emailed Supervisor Phelon about this. Supervisor Phelon stated he would not remove the unauthorized absence despite that Mr. Small was not 15 minutes late.

94. On or about 05/19/15 Chief Union Steward Michael Travis emailed Manager Joe Byrd requesting a copy of the Service Dispatch Operating Procedures for which Mr. Small was reprimanded on 03/13/15 and 03/18/15. Mr. Byrd responded by saying that the department does not have a Service Dispatch Operating Procedures manual.

95. On or about 07-03-15 Mr. Small's vacation request for religious services was once again wrongfully denied. He was told his vacation request to attend religious services was denied because of an emergency power outage and that no one on duty would be allowed to leave. However, Chief Joanne Johnson was allowed to leave at 5:00PM that day, indicating that it was not an emergency situation or staffing issue that was the real reason Mr. Small's request was denied.

96. On or about 8-28-15 and 8-30-15 a co-worker who does not share Mr. Small's religious beliefs showed up over fifteen (15) minutes late and did not receive discipline.

## CAUSES OF ACTION

## Count I

## **Discrimination in violation of Title VII of the Civil Rights Act of 1964 Religious Discrimination**

97. Plaintiff is a member of a protected class covered by Title VII, 42 U.S.C. sec. 2000e, *et seq*.

98. Defendant through its agents, representatives and employees, engaged in actions and omissions constituting unlawful religious discrimination, and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq*.

99. Defendant through its agents, representatives and employees, intentionally willfully and knowingly affected the terms and conditions of Plaintiff's employment and engaged in unlawful religious discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq*.

100. As a direct and proximate result of Defendant's unlawful discriminatory, and harassing conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's

federally and Constitutionally protected rights, Mr. Small has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, and emotional distress.

## Retaliation

101. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

102. Plaintiff is a member of a protected class covered by Title VII, 42 U.S.C. sec. 2000e, *et seq*.

103. Plaintiff engaged in a protected activity, including that he complained about being discriminated against due to his religion, opposed unlawful practices of the Defendant and made an EEOC charge, and filed internal EEO complaints, and protested unlawful practices by the Defendant.

104. Defendant was aware of Plaintiff's protected activities.

105. Defendant through its agents, representatives and employees, intentionally willfully and knowingly took adverse action or created a hostile work environment due to Plaintiff engaging in protected activities (protesting and opposing unlawful practices) which affected the terms and conditions of Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*

106. Defendant through its agents, representatives and employees, engaged in actions and omissions constituting retaliation (as Plaintiff engaged in protected activities) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*

107. As a direct and proximate result of Defendant's unlawful retaliatory conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's federally and

Constitutionally protected rights, Mr. Small has suffered harm, including but not limited to lost wages, benefits, and damage to his reputation, and emotional distress.

## Count II

### Discrimination in violation of the Americans with Disabilities Act and as Amended

108. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein, and alleges that:

109. The actions and omissions (intentional, willful and knowing) by Defendant, through its agents, representatives and employees, constitute unlawful discrimination and/or retaliation against Plaintiff in the terms and conditions of his employment based upon his medical condition (on the basis of his disability and failure to accommodate), all in violation of the Americans with Disabilities Act of 1990, as amended (ADA and ADAAA), 42 U.S.C. §12117 *et seq*.

110. Plaintiff seeks injunctive relief to remedy the alleged wrongdoings on the basis that he has no adequate or complete remedy at law to redress the discriminatory practices of Defendant.

111. As a direct and proximate result of Defendant's unlawful discriminatory, retaliatory and harassing conduct against Plaintiff, and as a direct and proximate result of the violations of Plaintiff's federally and Constitutionally protected rights, Mr. Small has suffered harm including but not limited to lost wages, benefits, and damage to his reputation, embarrassment, humiliation, pain and emotional distress and loss of enjoyment of life.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Court enter a judgment in his favor against the Defendant following a jury verdict in his favor and that the following relief be granted:

1. A permanent injunction against the Defendant prohibiting any future discriminatory practices as there is no adequate or complete remedy at law to redress the discrimination, retaliation, and harassment;

2. An Order to Defendant to conduct training concerning the prevention of discriminatory practices based upon religion; and other equitable relief as may be appropriate;

3. MLGW be directed to give Mr. Small a position, for which he is qualified and is the same or similar pay/duties/responsibility, which position would allow Mr. Small to attend his religious services without a problem.

4. Backpay, lost benefits and other pecuniary and economic losses caused by the Defendant's unlawful conduct;

5. Compensatory damages and losses in an amount to be determined at trial but not less than $300,000.00;

6. All reasonable attorneys' fees, costs, pre-judgment and post-judgment interest; and

7. Such further relief as is deemed appropriate.


A JURY TRIAL IS DEMANDED.


Respectfully Submitted,

HOLLAND & ASSOCIATES, PC

*s/Maureen T. Holland, Esq. #15202*
Maureen T. Holland, Esq. #15202
Yvette G. Holland, Esq. #32174
1429 Madison Avenue
Memphis, TN 38104
Telephone: (901) 278- 8120
Facsimile: (901) 278-8125