**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JASON SMALL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-02118-SHL-dkv |
| | ) | |
| MEMPHIS LIGHT, GAS & WATER, | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Mr. Jason Small, filed this suit on February 21, 2017, alleging discrimination, harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). (ECF No. 1.) Mr. Small's claims stem from his time as an employee with Defendant Memphis, Light, Gas & Water ("MLGW"), specifically from his experience being reassigned from his original post to a new post as a result of his work-related injury and resulting disability. (Id.) Mr. Small alleges that MLGW, through its reassignment and subsequent treatment of him in his new position, discriminated against him based on his disability and religion, created a hostile work environment and retaliated against him for reporting that discrimination. (Id.)

Now before the Court is Defendant's Motion for Summary Judgment, filed on January 19, 2018. (ECF No. 49.) Defendant argues that Mr. Small is unable to provide sufficient evidence to establish a prima facie case for any of his claims, or to create a disputed fact as to his prima facie burdens. In addition, Defendant contends that there is no evidence that MLGW's non-discriminatory reasons for assigning him to his current position and denying his requests for accommodation were pre-textual. Based on these deficiencies, Defendant submits

that summary judgment is appropriate.  (Id.)  Plaintiff responded in opposition on March 2, 2018,

arguing that he is able not only to establish a prima facie case but to demonstrate that

Defendant's non-discriminatory reasons for its treatment of Mr. Small were pre-textual, or at

minimum to establish sufficient disputes of material facts to support denial of the motion.  (ECF

No. 63 at 5, 7.)  Defendant replied on April 18, 2018, restating its initial argument for summary

judgment.  (ECF No. 70 at 2, 3.)

For the reasons more fully outlined below, the Court concludes that there are no genuine

issues of material fact and Mr. Small's claims fail as a matter of law.  Defendant's Motion for

Summary Judgment is **GRANTED**.

## FACTS

Mr. Small, a practicing Jehovah's Witness, alleges discrimination by Memphis Light,

Gas & Water based on his religious beliefs and disability.  (ECF No. 1.)  The following facts are

taken from the evidence provided to the Court in the pleadings and subsequent filings, including

depositions, documents and stipulations of undisputed facts.[1]  Disputed facts that are immaterial

to the relevant legal questions will not be included in the Court's summary of facts or in the

evaluation of Mr. Small's claims.

From 2002 to March of 2013, Mr. Small was a Substation Electrician making

approximately $64,521 per year.  (ECF No. 62 at 20.)  The Substation Electrician position had

standard hours that allowed Mr. Small to complete his weekly religious obligations, which

include services on Wednesdays and Sundays and community work on Saturdays.  (ECF No. 1 at

---

[1] Facts cited from Mr. Small's Complaint are either undisputed by MLGW or later
supported by other evidence.  Additionally, the Court cannot accept certain of Mr. Small's
unsubstantiated assertions of fact as true.  Mr. Small relies on some of these conclusions to
support his assertion that there are genuine disputes of material fact that defeat summary
judgment.  The Court provides explanatory footnotes outlining the reasoning behind the
exclusion of these conclusions, which have been presented as facts.

4.)  In early 2013, Dr. Fahey, Mr. Small's treating physician, determined that he could no longer safely perform the Substation Electrician position as a result of an injury that occurred on the job.  (Id. at 3.)  Plaintiff was removed from this position, given permanent restrictions related to his injury, and placed on reduced salary pending reassignment to a job he could perform without substantial risk of further injury.  (Id.)

Mr. Eric Conway, a Human Resources ("HR") employee, was assigned to help Mr. Small find a new position.  (Id.)  Individuals subject to reassignment are given a year in which to find a new position.  (Id.)  Early in his time in this process, Mr. Small expressed an interest in the position of Inspector in the Revenue Protection Department.  (Id. at 4.)  One of the reasons this position interested Mr. Small was that it allowed him to work hours similar to his previous position and thus would not interfere with his religious obligations.[2]  (Id. at 6.)  Mr. Small told Mr. Conway of his interest in the position. (Id. at 4.)  Mr. Conway first mistakenly informed Mr. Small that he was not qualified for the position but Mr. Conway's supervisor corrected him, and Mr. Small's application proceeded.  (ECF No. 54-1 at 6.)

Dr. Fahey was charged with evaluating Mr. Small's ability to safely perform the essential functions of any new position to which he might be assigned.  (ECF No. 1 at 5.)  Dr. Fahey evaluated Mr. Small for the Inspector position based on MLGW's published job description for the position.  (Id.)  This description noted that, "**THIS LIST OF ESSENTIAL FUNCTIONS IS NOT EXHAUSTIVE AND MAY BE SUPPLEMENTED AS NECESSARY.**"  (ECF No.

---

[2] There is some dispute as to when Mr. Conway was informed of Mr. Small's religious obligations.  Mr. Small alleges that he told Mr. Conway about his services early in the reassignment process, but Mr. Conway asserts that he did not know until July of 2013, after he had assigned Mr. Small to the Dispatcher position discussed below.  (ECF No. 54-1 at 34.)  However, as is more fully discussed below in the Analysis section, MLGW was not obligated to keep Mr. Small in the reassignment process in order to accommodate him, making the dispute immaterial. (ECF No. 54-1 at 31.)

62 at 8.)  Based on the information he had, Dr. Fahey determined that the job seemed reasonable for Mr. Small and that Plaintiff "should be capable of performing" the required tasks without significant risk of further injury.  (ECF No. 62-7.)

However, at some point after Dr. Fahey's initial determination, Vernica Davis (Medical Coordinator at MLGW) requested that David Staggs, the Supervisor of Revenue Protection at the time, produce additional information about the Inspector position, including a physical demand analysis and list of additional responsibilities.  (ECF No. 62 at 13.)    According to Mr. Conway, Ms. Davis asked for this additional information because she had concerns "[b]ased on [Mr. Small's] physical limitations or restrictions, [about] him being able to perform this job.   Due to her experience with other employees being hurt in that job, she knew that it has physical aspects that he may not be able to do."[3]  (ECF No. 62-19 at 6.)  Without knowledge that Mr. Small was applying for the position, (ECF No. 62 at 13), Mr. Staggs produced information about physical demands and responsibilities not contained in the original job description, such as lifting heavy

---

[3] Mr. Small alleges that Ms. Davis and Mr. Conway asked for this separate information because of animus against disabled individuals; however, Mr. Small provides no evidence of this other than the request and creation of the information itself and his subsequent assignment to the Service Dispatcher position.  Moreover, the additional job requirements were provided by Mr. Staggs, who had no knowledge of Mr. Small's circumstances.  (ECF No. 62 at 13.)

Additionally, Mr. Small later asserts that Mr. Conway sees disabled individuals as a "burden" on MLGW.  (ECF No. 63 at 13.)  This conclusion is apparently based on a statement Mr. Conway made in his deposition that paying individuals who are in the reassignment pool and able to work but without a job is a "financial burden" on MLGW that can be "extreme."  (ECF 62-19 at 14.)  Mr. Conway's position on this issue is inconsistent with Mr. Small's allegation that Mr. Conway wanted to keep him from the Inspector position, as the financial burden that Mr. Conway references would in fact incentivize him to find Mr. Small a position for which he was qualified as quickly as possible.

Given Mr. Small's failure to support his conclusory statements with evidence from the record and the fact that the record tends to support the opposite conclusion, the Court disregards Mr. Small's conclusory statements on this issue.

objects with some regularity and the need for annual firearm certification[4] (ECF No. 62-10). The information also noted that Inspectors generally work alone in the field.[5]  (Id.)

Mr. Staggs's set of new qualifications and essential functions was given to Dr. Fahey for the purpose of reevaluating Mr. Small's ability to perform the job.  (ECF No. 62 at 17.)  Dr. Fahey expressed concern about some of the responsibilities, writing, "[W]hat I can say is there are several duties described in this Inspector duty which I do not think he can do, but I do not see them as core activities to the job."  (ECF No. 62-11 at 2.)  He also noted that Mr. Small was insistent that he could perform the job.  (Id.)  Despite Dr. Fahey's recommendation, Plaintiff was not given the Inspector position based on MLGW's position that he could not perform the essential functions of the job with or without reasonable accommodation, and he continued to wait for reassignment.  (ECF No. 62 at 19.)

Around the same time, Mr. Conway asked Mr. Small about another available position, that of Service Advisor.  (ECF No. 1 at 6.)  Mr. Small declined the position because the shift work and mandatory overtime would have conflicted with his religious obligations.  (ECF No. 1 at 6.)  Shortly after, Mr. Conway informed Plaintiff that a Service Dispatcher position was available, that he was qualified for the position, and that he was obligated to accept the position or risk termination.  (ECF No. 54-1 at 14.)  This ultimatum is in line with MLGW policy, which

---

[4] Specifically, Mr. Staggs states that "Inspectors spend 33% of their time carrying objects weighing over 60 pounds, including lifting or removing box tops that weigh over 100 lbs. Additionally, gas valves and meters can weigh up to 100 lbs. Inspectors frequently (as in 34% - 66% of the time) twist and turn gas valves and meters."  (ECF No. 71 at 8.)

[5] Additionally, Mr. Stagg notes that "work[ing] in the field independently" is an "essential function" of the Inspector position and that "if an inspector could not lift or remove a box top or twist and turn a gas valve or meter, and needed assistance doing so, MLGW could not make sure this assistance would always be available unless the company hired someone specifically to provide assistance or removed someone from their regular job to assist." (ECF No. 71 at 8.)

states, in relevant part:  "If an employee refuses to accept a reassignment, the employee shall be

determined eligible for termination for just cause."  (ECF No. 71-2 at 11.)  Mr. Small, feeling

pressured by Mr. Conway to take the position, accepted, despite the fact that the position

required shift work and mandatory overtime that would cause conflict with his religious

obligation.  (ECF No. 62 at 22.)  Mr. Small notes that at this time he did not believe Mr. Conway

was acting out of religious animus.  (54-1 at 17–18.)  The Service Dispatcher position had a

similar pay range to the Inspector position, with the midpoint actually being higher in the

Dispatcher position.[6]  (ECF No. 1 at 4.)

Around the time he began his job as Dispatcher in the summer of 2013, Mr. Small

emailed Mr. Conway to inform him that he would like a religious accommodation to be able to

attend his religious services and complete his community work and that this accommodation

could either take the form of being put back into the reassignment pool[7] or given an exemption

from certain shifts and the mandatory overtime.  (ECF No. 62 at 22.)  A few months later, Mr.

---

[6] Mr. Small alleges that the Inspector position was better, but his only evidence, aside
from the shift times, is that he might, in future, have been able to advance to a higher level of
pay.  (ECF No. 63 at 9.)  He does not dispute that the Dispatcher position actually provided a
higher salary midpoint.  (ECF No. 1 at 4.)

[7] Mr. Small asserts that MLGW's failure to allow him to re-enter the reassignment pool
was a violation of policy and further evidence of discrimination, as another employee placed in
the same department from the reassignment pool was allowed to do so.  (ECF No. 54-1 at 16.)
However, the individual to whom Mr. Small compares himself left the position because of
unsatisfactory job performance, and Mr. Small had not received any unsatisfactory reviews.
(ECF No. 54-1 at 13–14.)  Mr. Phelon Grant, a Supervisor who responded to Mr. Small's
request, informed him of the policy:  "[A]n employee may be returned to their prior position
during the trial period on the basis of performance deficiencies.  There have been no
performance deficiencies during your trial period." (ECF No. 71-1 at 1.)

Mr. Small provides no evidence of an unsatisfactory performance on his part, noting only
that his religious obligations should have sufficed. (ECF No. 54-1 at 13–14.)  This is insufficient
to create a genuine dispute and, accordingly, the Court cannot accept as fact Mr. Small's
assertion that there was an applicable policy or that he was treated differently than others in the
same situation.

Conway informed Mr. Small that his request had been denied as it would cause an undue hardship because MLGW assigns shifts according to a seniority policy.  (ECF No. 54-1 at 38.) Mr. Conway also noted that Mr. Small could swap shifts as long as he did so according to MLGW policy and that he could use vacation time.[8]  (ECF No. 62 at 22.)  Mr. Small filed a complaint with the Equal Employment Opportunity Commission ("EEOC") that fall, alleging disability and religious discrimination.  (Id.)

In October of 2014, after an accommodation request had been denied, Mr. Small was informed that MLGW had reconsidered, and Mr. Small was granted the option to "blanket swap" his shifts, which would allow him to change shifts with another employee each quarter if necessary to attend his services.  (Id. at 23.)  At the time the accommodation was granted, Mr. Small no longer worked Wednesdays but he chose not to use the "blanket swap" for Sundays (ECF No. 54-1 at 15–16),  and missed work on multiple occasions to attend religious services (ECF No. 62 at 27–28).[9]  On the last occasion, Mr. Small was suspended for two days for failing to report for his scheduled shifts.  (Id.)  Mr. Small has, from the time of his first written request in 2013, renewed his request for accommodation through reassignment or limited hours several times and has been denied each time on the same grounds and with the same reminders.  (Id. at 23.)

---

[8] In correspondence with Mr. Grant dated August 8, 2013, Mr. Small was informed that he would be allowed Saturdays and Sundays off but that being off on Wednesdays as well would not be possible because of the burden it would cause. (ECF No. 71 at 9.)

[9] Mr. Small argues that he was wrongfully denied vacation time for at least one of these services. (ECF No. 62 at 27.)  Though it is true that vacation had been approved for that Wednesday evening, Mr. Small's shift had switched at that point so that he was no longer working Wednesdays. (Id. at 28.)  As a result of this shift change, Mr. Small's vacation was voided as he no longer needed vacation on Wednesday evenings. (Id.)  Instead, Mr. Small was called in to work mandatory overtime on a Wednesday night but did not show up. (Id.)

Mr. Small is still a Service Dispatcher.  Though he has been required to perform mandatory overtime that conflicts with his beliefs at times, his regular shift allows him to attend the necessary services on Wednesdays and Sundays (ECF No. 54-1 at 12), and MLGW has allowed him to use a "blanket swap," which would allow him to avoid conflicts by swapping shifts with another employee each quarter (Id. at 15–16).  Though Mr. Small has noted that the "ideal time" to complete his religious outreach is during his current Saturday shift, it is undisputed that he can fulfill his obligations after his shift as well.  (ECF No. 70-3.)

## ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Once a properly supported motion for summary judgment has been made, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or must argue that the moving party is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  The evidence is viewed in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

While the Court views all evidence and factual inferences in the light most favorable to the non-moving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Id. at 247–48.  Moreover, the opposing party "cannot rest solely on the allegations made in [his] pleadings" but must cite to appropriate evidentiary support.  Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v.

8

Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002)) (alteration in original).  The Court's role is not to weigh evidence or assess witness credibility but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Kroll v. White Lake Ambulance Auth., 763 F.3d 619, 623 (6th Cir. 2014) (quoting Anderson, 477 U.S. at 251–52).

Here, Defendant moves for summary judgment on all of Plaintiff's claims, arguing that he fails to establish the prima facie elements (or a disputed fact as to the elements) of his claims for discrimination, harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and under the Americans with Disabilities Act ("ADA") and fails to point to any evidence of pretext by MLGW.  At times, Plaintiff alleges that there was discrimination based on religious animus "and/or" disability.  (ECF No. 1 at 5, 8.)  The Court assumes that Mr. Small believes that the discrimination could have been rooted in both at the same time; however, the standards for evaluating whether discrimination has occurred are different for each. Consequently, the Court will first address Plaintiff's discrimination claims brought under the ADA before moving to those brought under Title VII.  Because claims of retaliation under Title VII and the ADA are evaluated using the same set of factors and because Mr. Small alleges the same actions constitute retaliation, those claims are then evaluated together.

## I.    Mr. Small's Claims under the Americans with Disabilities Act

Defendant argues that the undisputed facts demonstrate that Mr. Small was not qualified for the Inspector position and that his placement in the Dispatcher position did not constitute an adverse action, defeating two prima facie elements of his ADA claim.   (ECF No. 49-1 at 4–7.) It further argues that, even if the Court were to determine that Mr. Small could establish a prima facie case, the undisputed proof indicates that the decisions to deny Mr. Small the Inspector

9

position and place him in the Dispatcher position were rooted in non-discriminatory reasons, namely Mr. Small's inability to perform essential functions of the Inspector position (and his ability to perform the Dispatcher position).  Thus, according to Defendant, Mr. Small cannot demonstrate that the reasons for denying him the Inspector position and reassigning him to the Dispatcher are pre-textual.  (Id. at 8–9.)  Defendant presents the same argument to rebut Mr. Small's failure to accommodate claim, noting his inability to perform the essential functions of the Inspector job serves to defeat that claim as well. (Id. at 10.)

To demonstrate a prima facie case of discrimination under the ADA, a plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." Whitfield v. Tennessee, 639 F.3d 253 (6th Cir. 2011).  Similarly, to demonstrate a failure to accommodate, an employee must demonstrate that she is able to complete the job with or without accommodation. Penny v. UPS, 128 F.3d 408, 414 (6th Cir. 1997).  An employee who cannot perform the job's essential functions is not a qualified individual under the ADA.  Hoskins v. Oakland Cnty. Sheriff's Dep't, 227 F.3d 719, 724 (6th Cir. 2000).

Once a prima facie case is established, the burden shifts to the employer to provide a non-discriminatory reason for the actions in question and then back to the plaintiff to demonstrate that the non-discriminatory reason provided is pre-textual.  Whitfield, 639 F.3d  at 259.  At the summary judgment stage, a plaintiff only has to demonstrate a genuine issue of fact as to whether the reasons offered are pre-textual. Id. at 260.

Because Mr. Small has failed to establish a prima facie case, the Court need not reach the issues of burden-shifting.  First, it is assumed that Mr. Small can show that he is a disabled individual, that MLGW knew or had reason to know of his disability, and that the position of Inspector remained open while MLGW looked for someone to fill it.  However, as to evidence that he is qualified with or without reasonable accommodation and that there has been any adverse employment action, he fails.  Mr. Small argues that his assignment to the Service Dispatcher Position instead of the Inspector position is a manifestation of animus against him as a person with a disability and constitutes a failure to accommodate and an adverse employment action.  His claim appears to be based on his assertion that he can perform the true essential functions of the Inspector position.  However, examining the evidence in the light most favorable to Mr. Small, he cannot meet the standard necessary to demonstrate either an adverse action or a failure to accommodate, and thus this claim fails as a matter of law.

Beginning with Mr. Small's qualification for the Inspector position, it is undisputed that Dr. Fahey, Mr. Small's treating physician, initially indicated that Mr. Small should be able to fulfill the responsibilities of the Inspector position without serious risk of further injury.  Mr. Small claims that what happened next is a clear indicator of animus sufficient to establish both his ability to fulfill the essential functions of the job and an adverse employment action.  The Court cannot agree.

As noted above, Mr. Small was, as Dr. Fahey acknowledged, unable to complete some of the essential functions of the job outlined by Mr. Staggs because of his restrictions.  (ECF No. 62-11 at 2.)  Key to Mr. Small's argument is the assertion that the tasks included with the new information were not essential functions of the job and thus Mr. Small was wrongly denied the position.  Specifically, he asserts that the list of additional responsibilities did not constitute

essential functions of the job because:  (1) Mr. Small spoke with others about the job and felt he

had an idea of what was involved (ECF No. 54-1 at 7); (2) Dr. Fahey did not see them as core

functions (ECF No. 62-11 at 2) and (3) these responsibilities were not on the initial job

description published by MLGW (ECF No. 1 at 6).  Some of the factors courts consider when

determining whether or not something is an essential function are the experience of past and

current individuals on the job, the employer's judgment, whether or not the information was put

into a job description before the employer began advertising or interviewing, and the amount of

time spent performing the function.  29 C.F.R. § 1630.2(n)(3).

 As to the first consideration, Mr. Small cannot identify a single individual with whom he

spoke about the position, making it difficult to take his assertion of his second-hand knowledge

of the job and of the frequency of the performed functions as establishing a fact that can be used

as evidence of experience of past or current Inspectors.  (ECF No. 54-1 at 7.)  Moreover, the

additional requirements were provided by the Supervisor in the department, who, as Mr. Small

acknowledges, had no knowledge of him or his physical restrictions, and who had direct and

daily contact with Inspectors and detailed knowledge of their duties, thus a source of information

rooted in the experience of past and current employees.

 As to the second point, while Dr. Fahey was charged with evaluating Mr. Small's fitness

for the position, he has no expert knowledge of the essential functions of an Inspector, so his

comment that he did not see the duties Mr. Small could not perform as "core functions" cannot

create a genuine issue of material facts on this issue.  He is a medical doctor, not qualified to

assess which are the essential functions.

 Finally, though MLGW did not initially publish this additional information, it was

produced by the Supervisor of the department for the specific purpose of making sure that

someone being assigned to the position would be qualified without knowledge that the "someone" was Mr. Small.  It is also undisputed that MLGW reserved the right to supplement the information in the job description with additional essential functions, as noted on the bottom of the description itself.  While Mr. Small's frustration at being denied the position he wanted based on information not initially available to him is understandable, because there is not sufficient evidence in the record, the Court cannot present as fact Mr. Small's conclusion that these were not essential functions of the job.

Because Inspectors work alone in the field, and because an Inspector may be required to perform these functions with some frequency, it would be difficult and impractical for MLGW to provide Mr. Small with the necessary assistance in the Inspector position without providing him an assistant or someone otherwise on call, an action that would shift some of the essential functions to another employee, which MLGW is not required to do.  See Hoskins, 227 F.3d at 729.  Thus, Mr. Small cannot demonstrate that he was qualified for the position with or without accommodation and his claim of discrimination under the ADA fails.  Because Plaintiff must also show an ability to perform the job with or without accommodation to make a showing of failure to accommodate, Mr. Small's claim for failure to accommodate fails as well.

Even assuming Mr. Small could make a showing that he was qualified with accommodation, he cannot show an adverse employment action.  When determining whether an adverse action has occurred, courts look to evidence such as demotion, decrease in pay, or a move to a less prestigious position.  See Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999).  The position to which Mr. Small was assigned allowed him to maintain his rate of pay and Mr. Small does not argue that there was any difference in prestige, aside from the above

noted argument that a future pay rate could have been higher in the Inspector position.  That difference does not create an adverse job action.

For the foregoing reasons, Defendant's Motion for Summary Judgment as to the claim of discrimination under the ADA is **GRANTED**.

## II.   <u>Mr. Small's Claims under Title VII</u>

Plaintiff's Title VII claim based on religious discrimination is two-fold, specifically that he experienced both discrimination and a hostile work environment rooted in religious animus. However, Defendant argues that Plaintiff cannot establish a prima facie case for either theory of his Title VII claim.  (ECF No. 49-1 at 12–14, 24.)  As to his claim of religious discrimination, MLGW argues that Mr. Small's religious beliefs did not conflict with his employment requirements, defeating an essential element of the prima facie case.  (<u>Id.</u> at 12–13.) Additionally, MLGW argues that accommodating Mr. Small would create undue hardship, which the law does not require.  (<u>Id.</u> at 14.)  Thus, he cannot meet two of the requirements necessary to establish a prima facie case of religious discrimination.   (<u>Id.</u> at 12–14.)  As to his hostile work environment claim, Defendant against asserts that he cannot establish a prima facie case because he cannot show that, (1) the alleged harassment was based on religion or that (2) the alleged harassment was severe or pervasive enough to constitute a hostile work environment, two of the necessary elements.  (<u>Id.</u> at 24–26.)

Title VII prohibits, in relevant part, discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion."  42 U.S.C.S. § 2000e-2 (2018).  As noted, Mr. Small contends that he suffered discrimination in the form of a failure to accommodate and the creation of a hostile work environment.  These claims will be addressed in turn.

A. *Religious Discrimination and Accommodation*

To establish religious discrimination, an employee must show that:  "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement."  Smith v. Pyro Min. Co., 827 F.2d 1081, 1085 (6th Cir. 1987).  Once an employee has established a prima facie case, the burden shifts back to the employer to show that it is not possible to accommodate the employee without undue hardship. Id.  An employee must attempt to cooperate with an employer's proposed accommodation.  Id. Because the question of "undue hardship" versus a "de minimis burden" will naturally shift from employer to employer, the Court looks to the specific situation in each case.  Id. Accommodations that would interfere with union agreements, shift assignments and seniority policies have been deemed to place an undue hardship on employers.  See TWA v. Hardison, 432 U.S. 63, 80 (1977) (Title VII does not require employers to "deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others.")

It is undisputed that Mr. Small has sincere religious beliefs and that MLGW is aware of these beliefs.  Moreover, the Court cannot agree with MLGW's assertion that Mr. Small could merely attend the services of another congregation to satisfy his obligations as a leader in his specific congregation, and so it will be assumed for the purpose of this Motion that there was at some time a conflict between Mr. Small's obligations and his employment.  Additionally, for this Motion, it will be assumed that the suspension Mr. Small received when he failed to show up for mandatory shifts constitutes discipline sufficient to meet the third element of the prima facie case.  However, MLGW has demonstrated, through undisputed facts, that it has offered

accommodations where possible by allowing a "blanket swap" and that where it has not offered accommodations, it is because accommodations would result in an undue hardship.

Smith is instructive in evaluating the facts of the instant case.  In Smith, the employee believed it was a sin to work on Sundays, informed his employer of his beliefs and was consequently fired.  827 F.2d at 1086.  The mining company for which Mr. Smith worked had a policy somewhat similar to MLGW, allowing employees who could not work on Sundays to swap with other employees.  Id. at 1083.  If no other employee would swap, the individual then had to report to a supervisor so that the problem could be resolved.  Id.  Mr. Smith failed to take the necessary steps to swap his shift because he also believed it would be a sin to ask another person to work on Sunday, though he informed the company of this belief and noted that he would accept a swap arranged by the company.  Id. at 1084.  Because the mining company had a policy of terminating anyone who had three unexcused absences and because Mr. Smith did not report to work as required, he was terminated.  Id.

In evaluating whether the ability to swap shifts was an appropriate accommodation, the Sixth Circuit found for Mr. Smith with an important caveat:  his belief that asking another individual to work on Sunday was a sin was key to determining the sufficiency of the accommodation.  Id. at 1088.  In fact, the court noted:  "We think it clear that if Smith had no religious qualms about asking others to work the Sundays he was scheduled to work, then Pyro's proposed accommodation would have been reasonable."  Id.

There are some similarities between Mr. Smith and Mr. Small beyond their sincere religious beliefs:  both were disciplined for failing to show up to work and both were asked to work shifts that interfered with their religious obligations.  In contrast to Mr. Smith, however, Mr. Small's opportunity to swap shifts was an effective accommodation as it did not interfere

16

with his beliefs.  Moreover, when Mr. Small failed to show up to work, it was not because he was assigned to a regular shift that conflicted with his obligations but because he was being asked to work mandatory overtime, assigned based on seniority status.  MLGW's obligation to upset seniority status related to how shifts are assigned is, as noted, limited because it is seen as an undue hardship.  See Hardison 432 U.S. at 81–82 (noting not only that violating seniority systems causes undue hardship but also that "seniority systems are afforded special treatment under Title VII itself"); see also Virts v. Consol. Freightways Corp., 285 F.3d 508, 518 (6th Cir. 2002) (holding violation of a seniority system to accommodate religious preference would cause an undue hardship).  Similarly, shifting all of the relevant mandatory overtime obligations to other employees or placing Mr. Small back in the reassignment pool on reduced pay to wait for a job with hours more in line with Mr. Small's religious obligations would, as a matter of law, place more than a de minimis burden on MLGW.

MLGW has thus sufficiently satisfied its obligation to demonstrate undisputed attempts at accommodation where possible and undue hardship where attempts were not made, and thus its motion for summary judgment as to the Title VII claims of religious discrimination and failure to accommodate are **GRANTED**.

B.  *Hostile Work Environment*

Mr. Small also alleges a hostile work environment in violation of Title VII, which Defendant argues, among other points, does not meet the legal standard of an "objectively" hostile environment.  To demonstrate a hostile work environment under Title VII, Plaintiff must demonstrate that he was (1) a member of a protected class; (2) subjected to unwelcomed religious harassment; (3) the harassment was based on religion; (4) the harassment had the effect of unreasonably interfering with Plaintiff's work performance by creating an intimidating,

hostile, or offensive work environment; and (5) the existence of employer liability.  See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).  To determine whether a hostile work environment existed, courts examine the totality of the circumstances and evaluate the situation both objectively and subjectively.  See Harris v. Forklift Sys., 510 U.S. 17, 21–22 (1993); see also Rabidue v. Osceola Ref. Co., Div. of Tex.-American Petrochemicals, 805 F.2d 611, 620 (6th Cir. 1986).  "Conduct that is not severe or pervasive enough to create an objectively hostile or abuse work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview."  Harris, 510 U.S. 17 at 21; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788, (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view.")

It is undisputed that Mr. Small is (1) a member of a protected group and that he has sincerely held religious beliefs, but Mr. Small fails to point to facts in dispute which would meet his burden as to the remaining elements.  As noted above, such claims are evaluated both objectively and subjectively, and the Court concludes that there is a genuine issue of fact as to the subjective part of the test, given Mr. Small's stress related to the tension between his work and his religious obligations.  Moreover, Mr. Small has indicated that he experienced increased stress and emotional and mental turmoil resulting from his assignment to the Service Dispatcher position and was seeing a mental health professional to help work through these issues.  (ECF No. 62-14.)

Moving to the objective evaluation, however, Mr. Small's allegations, assumed to be true for purposes of this Motion, do not rise to the level necessary to establish the existence of a hostile workplace.  Even as the Court reads the evidence in the light most favorable to Mr. Small,

there is not sufficient evidence that, objectively, Mr. Small experienced (2) unwelcome harassment (3) based on his religion that (4) created a hostile work environment.  As noted above, there are high standards for establishing the existence of a hostile work environment in the workplace, rooted in courts' hesitancy to use the law as a means of regulating everyday social interactions or to flood dockets with cases that are more appropriately dealt with through workplace mediation or other on-the-ground options.[10]  Though it is not necessary to demonstrate "tangible psychological injury," conduct that is "merely offensive" will not be enough to demonstrate a hostile work environment.  Harris, 510 U.S. 17 at 21.  Here, Mr. Small rests the entirety of his case on a series of actions that, as discussed more fully below, he cannot tie to any hostility toward his religious identity, forcing the Court to conclude that his claims cannot survive summary judgment.

First, it is difficult to construe what Mr. Small experienced as harassment based on religion.  There were never any comments made to him about his religious beliefs, nor does he present any evidence that the decision to employ Mr. Small as a Dispatcher instead of an Inspector was rooted in animus, aside from the fact that one required shift work and mandatory overtime while the position he preferred did not.[11]  Moreover, his initial placement in the

---

[10] See Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998) (noting Title VII is not meant to be expanded into a "general civility code").

[11] Mr. Small provided the following information about religious animus during his deposition:

> Q: Do you have any evidence of Mr. Conway's actions of harassment were because of your religion in emails?
> A: Well, when I made the request to receive a first shift position like I had during my entire time with Light, Gas and Water because of my religious obligation I feel that, yes, that was a form of discrimination and harassment.
> Q: Did Mr. Conway ever make any negative comments about you being a Jehovah's Witness?
> A: No.

Dispatcher position rather than the Inspector position was a single action resulting from a reassignment program meant to place individuals who can work into appropriate positions. There is no dispute that Mr. Small was qualified for the Dispatcher position.

Looking at the harassment claim via the lens of the requested accommodations and disciplinary actions, it is still difficult to find an instance of harassment. While MLGW did initially deny some of Mr. Small's requests, they later reversed course and allowed him the opportunity to "blanket swap" as necessary. Moreover, Mr. Small himself acknowledges that his community obligations can be performed when he is not on shift on Saturdays. As it stands, Mr. Small has been granted the opportunity to shift swap, no longer works on two of the days on which he is required to worship, and is able to fulfill his other religious obligations without issue on Saturdays. He has been disciplined for failure to show up for mandatory shifts, but, as previously noted, MLGW is under no obligation to accommodate Mr. Small's requests related to these shifts because doing so would result in an undue burden.

Mr. Small presents no evidence that MLGW's actions were based on his religion, and, as he himself notes, he did not initially believe what was happening had anything to do with his religion. At one point, Mr. Small indicates that a supervisor told him that "everybody here has religion but the job comes first."[12]  (ECF No. 54-1 at 19.)  Similarly, as noted above, Mr. Small's

_____

Q: Did he ever make any comments that led you to believe that he held some sort of animus about you being a Jehovah's Witness?
A: Just the statement that – when I told him that I couldn't work a shift, he basically said that I would have to.  And I told him I couldn't work the shift because of my religion.
Q: Do you have anything else?
A: No.
(ECF No. 54-1 at 20.)

[12] See Hafford v. Seidner, 183 F.3d 506, 514 (6th Cir. 1999) (holding an individual whose supervisor accused him of preparing for a "holy war" and mocked the Muslim greeting

only evidence that his placement in the Dispatcher position over the Inspector position

constituted harassment was that the position required shift work where the Inspector position did

not.  As a matter of law, this is not sufficient evidence for a reasonable juror to conclude that

religiously-based discrimination motived MLGW's reassignment and accommodation decisions.

Mr. Small's evidence does not, as a matter of law, establish unwelcome harassment or

harassment based on his religion.  Thus, Mr. Small fails to provide allegations sufficient to

demonstrate the elements necessary to establish an actionable hostile work environment claim

under Title VII.  Therefore, Defendant's Motion for Summary Judgment as to the Title VII

hostile work environment claim is **GRANTED**.

## III.    <u>Retaliation under both the ADA and Title VII</u>

Defendant argues that Plaintiff's retaliation claims fail because he cannot demonstrate

either an adverse employment action or a causal connection between an adverse action and his

participation in a protected activity.  (ECF No. 49-1 at 18.)  Defendant again asserts that, even if

Plaintiff were able to establish a prima facie case, his claims fail because MLGW had legitimate

reasons for taking the actions at issue and Mr. Small cannot provide evidence that those reasons

were pre-textual.  (<u>Id.</u> at 22–24.)

Both Title VII and the ADA prohibit retaliation.  Title VII prohibits an employer from

discriminating against an individual "because he has opposed any practice made an unlawful

employment practice by [Title VII], or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this title."  42

U.S.C. § 2000e-3 (2018).  Similarly, the ADA states:  "No person shall discriminate against any

---

had not established sufficient evidence of a hostile work environment because the incidents
could be seen as "simple teasing"); <u>see also</u> <u>Burnett v. Tyco Corp.</u>, 203 F.3d 980, 985 (6th Cir.
2000) (holding that a "single battery" and "two merely offensive remarks," including one that
was profane and sexual, were insufficient to demonstrate a hostile work environment).

individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203 (2018).

To make out a prima facie case of retaliation, Plaintiff must show that (1) he engaged in protected activity; (2) Defendant knew he exercised his civil rights; (3) Defendant took adverse employment action against him; and (4) there was a causal connection between Plaintiff's protected activity and the adverse employment action. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 468–69 (6th Cir. 2012). Retaliation claims should be evaluated separately from discrimination claims in part because a violation of a retaliation provision "can be found whether or not the challenged practice ultimately is found to be unlawful." Johnson v. Univ. of Cincinnati, 215 F.3d 561, 580 (6th Cir. 2000).

It is undisputed that Mr. Small engaged in a protected activity when he brought complaints against MLGW and that MLGW had knowledge of this action, but Mr. Small fails to make a showing of adverse job action and thus also of a causal connection. As a start, Mr. Small was reassigned as a result of his injury. His reassignment did occur only after he reported his injury, but that is the natural and necessary result of a permanent work restriction, not an indicator of retaliation, and Mr. Small had taken no protected action at that time. Therefore, the Court does not assess Mr. Small's initial assignment to the Dispatcher position as potentially retaliatory.[13] Mr. Small's retaliation claim appears to be based on his continued employment in

---

[13] Additionally, Mr. Small makes no showing that the Inspector position was more prestigious, that the Dispatcher position was a "wretched backwater" alternative or that pay discrepancy occurred. See Mattei v. Mattei, 126 F.3d 794, 808 (6th Cir. 1997). Instead, he notes only that the assignment required shift work where an alternate assignment, for which it has been established that he was not qualified, did not. As noted, a change in hours can be sufficient to demonstrate adverse action under certain circumstances, specifically, in the case of retaliation claims, when the change clearly put the employee in a worse position and occurred after a

the Service Dispatcher position despite his repeated requests for reassignment, as well as the disciplinary actions taken against him for missing shifts.[14]

The Court finds no evidence of adverse employment action.  A job transfer can constitute an adverse action for the purposes of establishing a Title VII retaliation claim.  See White v. Burlington N. & Santa Fe Ry., 364 F.3d 789, 803 (6th Cir. 2004); see also Spees v. James Marine, Inc., 617 F.3d 380, 391 (6th Cir. 2010) (noting changes in shifts can constitute adverse action in certain circumstances).  A salary difference or difference in prestige can constitute an adverse action.  Id.  Additionally, even when an employee maintains the same salary, if she is placed in a "wretched backwater," an adverse action has likely occurred.  Mattei, 126 F.3d at 808.  Similarly, disciplinary action can serve as evidence of retaliation if a plaintiff can demonstrate sufficient loss.  See Blackburn v. Shelby Cty., 770 F. Supp. 2d 896, 925 (W.D. Tenn. 2011).

None of these situations is present here.  There is no proof that MLGW's denial of Mr. Small's accommodation request to be reassigned was retaliatory.  As discussed above, MLGW allowed transfer back into the reassignment pool when performance was unsatisfactory; Mr. Small's was not.  Moreover, because Mr. Small could not perform the essential functions of the Inspector position, MLGW would have had to pay Mr. Small 66 2/3 pay until a job with Mr. Small's requested shifts became available.  Given these undisputed facts, MLGW's decision not to put Mr. Small in the Inspector position or otherwise reassign him cannot, as a matter of law, be construed as retaliatory.

protected action.  Here, importantly, Mr. Small had made no complaint at the time that his shift changed, making it impossible for the change to be retaliatory.

[14] Though a brief discussion is included below, Mr. Small's claims here have been discussed in detail above in relation to the Title VII and ADA claims, and the Court incorporates the relevant portions of that analysis here.

As discussed above, the disciplinary action, while related to Mr. Small's religious beliefs, resulted from a failure to work mandatory overtime rather than any improper denial of vacation time requested for a day that Mr. Small did not normally work.  Because neither Mr. Small's placement nor the disciplinary action taken against him is sufficient to establish adverse or discriminatory action, Defendant's Motion for Summary Judgment as to the retaliation claims is **GRANTED**.

<u>**CONCLUSION**</u>

Because Mr. Small fails to establish a genuine issue of material fact as to his prima facie case of discrimination under Title VII or the ADA and because he cannot sufficiently demonstrate a retaliatory action, his claims fail as a matter of law.  Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**, this 11th day of September, 2018.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE