## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 12, 2020

Mr. Aubrey B. Gulledge
Mr. Rodrick D. Holmes
Mr. Brooks Emanuel Kostakis
Boyle Brasher
80 Monroe Avenue, Suite 410
Memphis, TN 38103

Ms. Maureen T. Holland
Ms. Yvette Holland Kirk
Holland & Associates
1429 Madison Avenue
Memphis, TN 38104

Re: Case No. 19-5710, *Jason Small v. Memphis Light, Gas and Water*
Originating Case No. : 2:17-cv-02118

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. Thomas M. Gould

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0082p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JASON SMALL,

    *Plaintiff-Appellant*,

  *v.*

MEMPHIS LIGHT, GAS AND WATER,

    *Defendant-Appellee*.

No. 19-5710

---

Appeal from the United States District Court
or the Western District of Tennessee at Memphis.
No. 2:17-cv-02118—Sheryl H. Lipman, District Judge.

Decided and Filed: March 12, 2020

Before: DAUGHTREY, KETHLEDGE, and THAPAR, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** Maureen T. Holland, Yvette Kirk, HOLLAND & ASSOCIATES, Memphis, Tennessee, for Appellant.  Rodrick D. Holmes, Brooks E. Kostakis, Aubrey B. Gulledge, BOYLE BRASHER LLC, Memphis, Tennessee, for Appellee.

    The court delivered a PER CURIAM opinion.  THAPAR, J. (pp. 7–11), delivered a separate concurring opinion in which KETHLEDGE, J., joined.

---

## OPINION

---

    PER CURIAM.  Jason Small claims that his employer, Memphis Light, Gas and Water, violated federal disability and civil-rights law when it reassigned him to a new position.  The district court rejected his claims as well as his motion to enforce an alleged settlement agreement.  We affirm.

No. 19-5710             *Small v. Memphis Light, Gas & Water*                      Page 2

I.

For over a decade, Small worked as an electrician at Memphis Light. But in early 2013, he suffered an on-the-job injury that required him to change positions. At first, Small expressed interest in a position as a revenue inspector. Instead, Memphis Light offered him a position as a service dispatcher. Without another offer—and at the risk of otherwise being terminated—Small accepted the dispatcher position.

Around the same time, Small raised concerns with Memphis Light that his new position would conflict with the practice of his religion (Jehovah's Witness). Small explained that he had services on Wednesday evenings and Sundays and that he had community work on Saturdays. He asked the company to reassign him to a different position or to different shifts. But Memphis Light denied the request, explaining that the accommodations would impose an undue hardship on the company and that its union required shifts be assigned based on seniority. Instead, the company suggested that Small swap shifts with his co-workers or use paid time off. Small renewed the same request without success. Yet later, Memphis Light reconsidered its decision and offered Small the option to "blanket swap" shifts—meaning that he could swap his shifts with another employee for an entire quarter.

Since then Small has remained in the dispatcher position. The parties dispute whether his schedule still conflicts with his religious commitments.

In 2017, Small sued Memphis Light for disability and religious discrimination as well as retaliation. On the eve of trial, the district court granted summary judgment to the company.

Almost immediately, Small filed a motion with the district court to enforce an alleged settlement agreement between the parties. According to Small, the parties had agreed on a settlement right before the summary judgment ruling. But the district court rejected the motion, finding that the parties had never agreed on all the material terms. This appeal followed.

II.

A.

Small first challenges the district court's grant of summary judgment. We review that decision de novo. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018).

*Disability Discrimination.* To begin with, Small argues that Memphis Light discriminated against him based on his disability when it refused to offer him a position as a revenue inspector. But Memphis Light has offered a legitimate, non-discriminatory reason for its decision: namely, that Small physically could not do the work of an inspector. *See, e.g.*, *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 4 (D.C. Cir. 2010). To rebut that explanation, Small must offer evidence that the company's stated reason was pretextual. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 895 (6th Cir. 2016).

Small contends that Memphis Light has presented shifting accounts of *who* determined he could not do the work of an inspector—a disability committee or an HR employee, Eric Conway. This suggests (he says) that the company has concealed the true reasons for its decision. For instance, Small stresses that Conway claimed to have made the final decision to reassign Small to a new position. Yet as Conway himself explained, the disability committee (on which he sat) determined whether Small physically could do the work; Conway then determined where to reassign him. Small offers no evidence to the contrary. Small also questions whether Memphis Light even had a disability committee. But multiple members of the committee confirmed that it existed and that it determined whether Small could do the work of an inspector. Again, Small cannot beat this evidence with nothing. *See Cripe v. Henkel Corp.*, 858 F.3d 1110, 1113 (7th Cir. 2017); *Wysong v. City of Heath*, 260 F. App'x 848, 858 (6th Cir. 2008).

Small further points to various company policies that, he says, gave him a "right" to be reassigned to a different position. But Small never explains how these policies show that the company's reason for not reassigning him to a *particular* position was pretextual. And for what it is worth, he has not identified any other open positions for which he was qualified. *Cf. Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1025 (6th Cir. 2013) (explaining that companies need not create new positions for disabled employees).

No. 19-5710                    *Small v. Memphis Light, Gas & Water*                    Page 4

Finally, Small says that there are factual disputes about whether he could do the work of an inspector. But the question is not whether Memphis Light was correct that Small could not do the work. Rather, it is whether the company "honestly believed" that to be the case at the time. *Ferrari*, 826 F.3d at 895. And Small has not offered any evidence that casts doubt on the company's honest belief. Hence he cannot show pretext.

Aside from pretext, Small argues in his reply brief that Memphis Light failed to accommodate his disability and that the district court evaluated this claim under the wrong legal standard. But Small forfeited this argument—which involves an entirely different theory of liability—when he did not raise it in his opening brief. *See United States v. Carson*, 560 F.3d 566, 587 (6th Cir. 2009); *see also Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018) (explaining the importance of distinguishing between these theories of liability because they involve entirely different frameworks). To hold otherwise would allow the appealing party to raise new issues to which the other party could not respond—as happened here. *See, e.g.*, *Sparkle Hill, Inc. v. Interstate Mat Corp.*, 788 F.3d 25, 29 (1st Cir. 2015); *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 123 (D.C. Cir. 2010).

*Religious Discrimination.* Small next argues that Memphis Light discriminated against him when it failed to accommodate his religion. But the company did not have to offer any accommodation that would have imposed an "undue hardship" on its business—meaning (apparently) anything more than a "de minimis cost." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977); *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). Memphis Light says that additional accommodations would have impeded the company's operations, burdened other employees, and violated its seniority system. Our court has found similar costs to be more than de minimis. *See Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 517–21 (6th Cir. 2002); *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1380 (6th Cir. 1994). And in any event, Small has not challenged whether the accommodations would have imposed an undue hardship on the company—beyond a passing assertion in his brief. Instead, he argues only about whether the company *did* accommodate his religious beliefs. *See, e.g.*, *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68–69 (1986) (distinguishing these issues); *Cooper*, 15 F.3d at 1379–80 (same).

Hence this claim cannot proceed. *See White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 854 (6th Cir. 2010).

In the alternative, Small argues that Memphis Light subjected him to a hostile work environment. But Small has not offered any evidence that the harassment he experienced (if any) was because of his religion. So this argument fails from the outset. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

*Retaliation.* Small also argues that Memphis Light retaliated against him because he complained about the alleged discrimination. But again, Small has not offered any evidence that the retaliation he experienced (if any) was because of his complaints. So this argument fares no better. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471–72 (6th Cir. 2012).

B.

Small also challenges the district court's refusal to enforce an alleged settlement agreement between the parties. We review the court's finding that the parties had never reached an agreement for clear error. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418–19 (6th Cir. 2000).

Small first argues that the parties had formed a binding settlement agreement. To form a binding agreement, the parties had to agree on all the material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *see also Sweeten v. Trade Envelopes, Inc.*, 938 S.W.2d 383, 385 (Tenn. 1996). The record shows that Memphis Light made its final settlement offer to Small on a Friday around noon. Among other things, that offer required Small to agree to a non-disparagement provision. Within minutes, Small's counsel responded that her client could not agree to a non-disparagement provision because it might bar him from filing future claims. She also said that she would talk to Small about the offer. Memphis Light soon acknowledged her response with an "O.K. Thanks." The company followed up a few hours later asking for an update on its offer. Small's counsel responded, "Not yet." She explained that she could not talk to Small because he was in a mandatory meeting. Finally, two hours later—after no further emails—Memphis Light revoked its offer.

No. 19-5710           *Small v. Memphis Light, Gas & Water*           Page 6

Given this evidence, it almost goes without saying that the parties never agreed on all the material terms. Memphis Light insisted on a non-disparagement provision; Small resisted that provision. Nothing in the record suggests that the district court erred—let alone clearly so—when it found that the parties had not reached an agreement. *See Therma-Scan*, 217 F.3d at 420.

Small also argues that Memphis Light promised to keep its settlement offer open until the district court issued a summary judgment ruling. Yet Small offers no evidence of such a promise. Instead, he offers evidence that the company warned that it would revoke its offer if the court issued a ruling. And he says that his counsel understood this to be a promise to keep the offer open. But none of this amounts to an *actual* promise to keep the offer open. So this argument fails too. *See Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 548 (6th Cir. 1994) (explaining that, under Tennessee law, an offeror ordinarily may withdraw an offer at any time before acceptance).

We affirm.

No. 19-5710           *Small v. Memphis Light, Gas & Water*           Page 6

Given this evidence, it almost goes without saying that the parties never agreed on all the material terms. Memphis Light insisted on a non-disparagement provision; Small resisted that provision. Nothing in the record suggests that the district court erred—let alone clearly so—when it found that the parties had not reached an agreement. *See Therma-Scan*, 217 F.3d at 420.

Small also argues that Memphis Light promised to keep its settlement offer open until the district court issued a summary judgment ruling. Yet Small offers no evidence of such a promise. Instead, he offers evidence that the company warned that it would revoke its offer if the court issued a ruling. And he says that his counsel understood this to be a promise to keep the offer open. But none of this amounts to an *actual* promise to keep the offer open. So this argument fails too. *See Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 548 (6th Cir. 1994) (explaining that, under Tennessee law, an offeror ordinarily may withdraw an offer at any time before acceptance).

We affirm.

---

## CONCURRENCE

---

THAPAR, Circuit Judge, concurring.  Almost fifty years ago, Congress struck a balance between the rights of religious employees and the interests of their employers.  According to that compromise, companies must accommodate religious practices and beliefs unless doing so would impose an "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  To be sure, Congress codified this requirement "somewhat awkwardly" in Title VII's statutory definition of "religion."  *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 63 n.1 (1986).  And Congress failed to specify exactly *what* it meant by "undue hardship."  But most likely, everyone assumed that courts would clarify this standard over time, using the traditional tools of statutory interpretation.

So what do those tools tell us?  Well, start with the text.  Congress didn't define the term "undue hardship," so we should give that term its ordinary, contemporary meaning.  *See, e.g.*, *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014).  Dictionaries from the period define a "hardship" as "adversity," "suffering" or "a thing hard to bear."  *The American Heritage Dictionary of the English Language* 601 (1969); *Black's Law Dictionary* 646 (5th ed. 1979); *Webster's New Twentieth Century Dictionary of the English Language* 826 (2d ed. 1975).  On its own terms, then, the word "hardship" would imply some pretty substantial costs.

But Congress didn't leave matters there.  Instead, it specified that the "hardship" must be "undue."  *See, e.g.*, *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013) ("Title VII requires proof not of minor inconveniences but of hardship, and 'undue' hardship at that."); *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 402 (9th Cir. 1978); *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975).  That means that the hardship must "exceed[] what is appropriate or normal"; in short, it must be "excessive."  *The American Heritage Dictionary of the English Language* 1398; *Black's Law Dictionary* 1370; *Webster's New Twentieth Century Dictionary of the English Language* 826.  So together the

phrase "undue hardship" tell us that the accommodation must impose significant costs on the company.

Not surprisingly, Congress has typically defined "undue hardship" in exactly this way. Take the Americans with Disabilities Act, which (like Title VII) requires companies to provide reasonable accommodations unless doing so would impose an "undue hardship" on their business. 42 U.S.C. § 12112(b)(5)(A). In that context, Congress defined an "undue hardship" as "an action requiring significant difficulty or expense" in light of certain enumerated factors (such as the size of the company). *Id*. § 12111(10). Nor does the meaning of "undue hardship" change if one ventures further afield in the United States Code. *See, e.g.*, 28 U.S.C. § 1869(j) (explaining that an "undue hardship or extreme inconvenience" for jury service means "great distance . . . from the place of holding court," "grave illness in the family," or "any other emergency which outweighs in immediacy and urgency the obligation to serve as a juror"); 29 U.S.C. § 207(r)(3) (explaining that an "undue hardship" under the Fair Labor Standards Act means "significant difficulty or expense"); 38 U.S.C. § 4303(15) (explaining that an "undue hardship" for veteran employment means "significant difficulty or expense").

Or consider how courts define "undue hardship" when Congress has failed to provide a statutory definition. For instance, the Bankruptcy Code allows debtors to discharge a student loan if they can show that the debt imposes an "undue hardship." 11 U.S.C. § 523(a)(8). "The plain meaning" of that term, courts have said, requires the debtor to show that the debt imposes "intolerable difficulties . . . greater than the ordinary circumstances that might force one to seek bankruptcy relief." *In re Thomas*, 931 F.3d 449, 454 (5th Cir. 2019). Indeed, "the adjective 'undue' indicates that Congress viewed garden-variety hardship as [an] insufficient excuse[.]" *In re Frushour*, 433 F.3d 393, 399 (4th Cir. 2005) (quoting *In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001)). And the same holds true when courts consider (or use) the phrase "undue hardship" in other contexts. *See, e.g.*, *Teamsters Local Union No. 171 v. N.L.R.B.*, 863 F.2d 946, 957 (D.C. Cir. 1988) (explaining that an "undue hardship" requires "significant mitigating circumstances"); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982) (explaining that an "undue hardship" might exist when there is an "unusual expense").

Given all this, one would think that the term "undue hardship" would have a similar meaning under Title VII. After all, courts typically try "to make sense rather than nonsense out of the *corpus juris*." *Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 101 (1991). But the Supreme Court has said otherwise.

The source of the problem is *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977). That decision primarily addressed whether Title VII's accommodation provision required employers to violate seniority systems created by their collective-bargaining agreements. *See id.* at 78–84. But in two brief paragraphs at the end of the opinion, the Court also asserted—almost as an afterthought—that requiring an employer "to bear more than a de minimis cost" in order to accommodate an employee's religion would be "an undue hardship." *Id.* at 84. The cost found to be more than de minimis: $150. *Id.* at 92 n.6 (Marshall, J., dissenting). And the employer unduly burdened by that cost: one of the largest airlines in the world.

At this point, you might be wondering where the "de minimis" test even came from? Certainly not the text of Title VII. The *Hardison* majority never purported to justify its test as a matter of ordinary meaning. And how could it? "De minimis" means a "very small or trifling matter[.]" *Black's Law Dictionary* 388. That seems like the opposite of an "undue hardship." *See Hardison*, 432 U.S. at 92 n.6 (Marshall, J., dissenting) ("I seriously question whether simple English usage permits 'undue hardship' to be interpreted to mean 'more than de minimis cost.'"). The "de minimis" test also seems in conflict with the background legal maxim *de minimis non curat lex* ("the law does not care for trifling matters"). *Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992); *Black's Law Dictionary* 388. The law usually does not care for trifling matters but apparently Title VII does.

Nor can one blame the parties in *Hardison*. None of them proposed the "de minimis" test—and probably for good reason. In fact, most of their briefing focused on other issues in the case.

As best one can tell, the *Hardison* majority adopted the "de minimis" test for two reasons: one explicit and one implicit. As for the explicit reason, the majority said that religious accommodations that involved more than "de minimis" costs would cause employers to

"discriminate" against their non-religious employees. *See Hardison*, 432 U.S. at 84–85. But that reasoning seems unreasonable on its face. Consider again the Americans with Disabilities Act, which requires employers to provide accommodations to their disabled employees. No right-minded person would call such accommodations a form of impermissible discrimination against *non*-disabled employees. *Cf. U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002); *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2034 (2015) ("But Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment[.]").

As for the implicit reason—acknowledged only by the *Hardison* dissent—the majority may have construed Title VII so narrowly because it feared that a broader reading might run afoul of the Establishment Clause. *See Hardison*, 432 U.S. at 89–90 (Marshall, J., dissenting). Yet whatever doctrinal merit that concern once may have had, I seriously doubt that it remains valid. Even properly read, Title VII doesn't require employers to provide any and all accommodations; it requires them to provide only those accommodations that won't impose an "undue hardship" on the company—meaning significant costs. That seems more than fine under the Establishment Clause. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 722–24 (2005); *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703, 711–12 (1985) (O'Connor, J., concurring); Michael W. McConnell, *Accommodation of Religion: An Update and a Response to the Critics*, 60 Geo. Wash. L. Rev. 685, 704 (1992); *see generally* Mark Storslee, *Religious Accommodation, the Establishment Clause, and Third-Party Harm*, 86 U. Chi. L. Rev. 871 (2019) (challenging the theory that religious accommodations violate the Establishment Clause whenever they impose more than de minimis costs).

In any event, the doctrine of constitutional avoidance doesn't give courts license to rewrite a statute. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). But the *Hardison* majority appears to have done exactly that. The only other explanation is that the majority stumbled through the looking glass and into "an Alice-in-Wonderland world where words have no meaning[.]" *Welsh v. United States*, 398 U.S. 333, 354 (1970) (Harlan, J., concurring in the judgment).

No. 19-5710                   *Small v. Memphis Light, Gas & Water*                   Page 11

Of course, all this does not mean that employers must *always* accommodate their employees' religious beliefs and practices. The term "undue hardship" makes clear "that this is a field of degrees, not a matter for extremes" or "absolutes." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 313 (4th Cir. 2008); *cf. Barnett*, 535 U.S. at 402. But *Hardison* itself adopted an "absolute" when it "effectively nullifi[ed]" the accommodation requirement. *Hardison*, 432 U.S. at 89 (Marshall, J., dissenting). And without any real reason.

The irony (and tragedy) of decisions like *Hardison* is that they most often harm religious minorities—people who seek to worship their own God, in their own way, and on their own time. *See* McConnell, *supra*, at 693, 721–22; Storslee, *supra*, at 873–74, 877. The American story is one of religious pluralism. The Founders wrote that story into our Constitution in its very first amendment. And almost two-hundred years later, a new generation of leaders sought to continue that legacy in Title VII. But the Supreme Court soon thwarted their best efforts. Even at the time, this "ultimate tragedy" was clear. *Hardison*, 432 U.S. at 97 (Marshall, J., dissenting) ("[O]ne of this Nation's pillars of strength our hospitality to religious diversity has been seriously eroded.").

In the end, this case doesn't involve a challenge to the "de minimis" test. Indeed, Jason Small hasn't even contested—at least in a meaningful way—his employer's claim of "undue hardship." But litigants should consider such challenges going forward. *See Patterson v. Walgreen Co.*, 140 S. Ct. 685 (2020) (Alito, J., concurring in the denial of certiorari). As the *Hardison* dissent explained, "All Americans will be a little poorer until [the] decision is erased." *Hardison*, 432 U.S. at 97 (Marshall, J., dissenting).

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-5710

JASON SMALL,

    Plaintiff - Appellant,

v.

MEMPHIS LIGHT, GAS AND WATER,

    Defendant - Appellee.

**FILED**
Mar 12, 2020
DEBORAH S. HUNT, Clerk

Before: DAUGHTREY, KETHLEDGE, and THAPAR, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Tennessee at Memphis.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the district court's grant of summary judgment in favor of Memphis Light, Gas and Water and its denial of Jason Small's motion to enforce a settlement agreement are AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk